## UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| TAMMERA MOREFIELD,<br><br>        Petitioner,<br><br>    vs.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,[1]<br><br>        Respondent. | Case No.: 1:18-cv-00545-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Tammera Morefield's Petition for Review (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On April 23, 2015, Petitioner Tammera Morefield ("Petitioner") protectively applied for Title II disability and disability insurance benefits. (AR 15.) Petitioner alleged disability beginning October 22, 2014. (*Id.*) Her claims were denied initially on September 25, 2015 and then again on reconsideration on January 27, 2016. (*Id.*) On February 29, 2016, Petitioner timely filed a written request for hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner testified by video from Boise, Idaho at a hearing held on August 22, 2017 in Billings,

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER – 1**

Montana.  (*Id.*)  Impartial vocational expert Jerry Gravatt also appeared and testified at the hearing.  (*Id.*)

On November 20, 2017, ALJ Michele M. Kelley issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her alleged onset date through her date last insured.  (AR 26.)  Petitioner timely requested review from the Appeals Council on January 18, 2018.  (AR 171).  On October 18, 2018, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security.  (AR 1.)

Having exhausted administrative remedies, Petitioner filed this case.  She contends that "[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is disabled from performing substantial gainful activity."  Pet. for Review 2 (Dkt. 1).  Petitioner argues that the ALJ erred in weighing medical opinion evidence, weighing the testimony of Petitioner and of a third party, and assigning a residual functional capacity that is inconsistent and unsupported by the record.  *See generally* Pet'r's Mem. (Dkt. 12).  Petitioner asks that the case be reversed or remanded for further administrative proceedings.  *Id.* at 20.

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER – 3**

## III. <u>DISCUSSION</u>

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of October 22, 2014 through her date last insured of June 30, 2017.  (AR 17.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it

**MEMORANDUM DECISION AND ORDER – 4**

does not significantly limit the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable
impairment or combination of impairments, disability benefits are denied.  20 C.F.R.
§§ 404.1520(c), 416.920(c).  Here, the ALJ found that, as of Petitioner's date last insured, she
had the following severe impairments: "chronic obstructive pulmonary disease (COPD); mild
osteoarthritis of hips/pelvis; fibromyalgia; depression; and anxiety."  (AR 17.)

The third step requires the ALJ to determine the medical severity of any impairments;
that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.
Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the
answer is yes, the claimant is considered disabled under the Social Security Act and benefits are
awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor
equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds
to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ found that Petitioner did not
have an impairment or combination of impairments that met or medically equaled the severity of
one of the listed impairments.  (AR 18–19.)

In the fourth step of the evaluation process, the ALJ decides whether the claimant's
residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.
20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do
physical and mental work activities on a sustained basis despite limitations from her
impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she
performed within the last 15 years or 15 years prior to the date that disability must be
established, if the work was substantial gainful activity and lasted long enough for the claimant

to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ

found that Petitioner had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b). The claimant can frequently
> push/pull and handle with her bilateral upper extremities. The claimant should not
> climb ladders/ropes/scaffolds and should only frequently climb ramps/stairs, stoop,
> kneel, crouch, and crawl. The claimant should avoid concentrated exposure to
> extreme noise defined as no greater than 3/5 in the scale noted in the Dictionary of
> Occupational Titles and Selective Characteristics of Occupations. The claimant
> should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases,
> and poor ventilation. The claimant should avoid all exposure to hazards including
> unprotected heights and dangerous machinery. The claimant can understand,
> remember, and carry out unskilled and detailed tasks up to Specific Vocational
> Preparation (SVP) three and a GED reasoning level of three. The claimant can
> maintain attention, concentration, persistence, and pace for such tasks for eight-
> hour workdays and forty-hour workweeks. The claimant can tolerate only
> occasional interaction with supervisors, coworkers, and the public. The claimant
> can tolerate only occasional changes in a routine work setting.

(AR 19.)  Based on this RFC, the ALJ further found that Petitioner was not capable of

performing any past relevant work.  (AR 24–25.)

 In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of her impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do

other work and meets the duration requirement, she is disabled.

 Here, the ALJ found that through Petitioner's date last insured, and considering her age,

education, work experience, and RFC, Petitioner could perform the requirements of

representative occupations such as "bench assembler," "assembler, small products," and

"assembler II."  (AR 25.)  The ALJ further found that these jobs exist in significant numbers in the national economy.  (*Id.*)

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "was not under a disability, as defined in the Social Security Act," from the alleged onset date through her date last insured.  (AR 26.)

**B.      Analysis**

Petitioner raises four primary issues with the challenged decision.  First, she argues the ALJ improperly weighed various medical opinions.  Second, she argues the ALJ improperly discredited her subjective testimony.  Third, she argues the ALJ improperly discounted third-party testimony.  Fourth, she argues the ALJ erred by assigning an RFC that is inconsistent with her own findings and not supported by the record.  *See generally* Pet'r's Mem. (Dkt. 12).  Each argument will be addressed in turn.

**1.  The ALJ Erred in Weighing Medical Opinions.**

Petitioner argues the ALJ erred in her weighing of several medical opinions.  Each such opinion will be addressed separately.

Social Security regulations generally provide that more weight is given to opinions of treating providers than to opinions of other medical sources.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Additionally, an ALJ must consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the opinion's supportability, the consistency of the opinion with the record as a whole, and whether the provider is a specialist.  20 C.F.R. §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).  An ALJ must give "specific and legitimate" reasons supported by substantial evidence for discounting a

contradicted opinion of a treating provider.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  To reject an uncontradicted opinion of a treating provider, an ALJ must state "clear and convincing reasons" supported by substantial evidence for doing so.  *Id.*

### A.  Dr. Hlavinka's July 6, 2016 Opinion

Petitioner was treated by her primary care provider, Dr. Hlavinka, M.D., approximately every three months from at least May 20, 2015 through March 24, 2017 (AR 507, 773).  Quoting case law, Petitioner contends the ALJ erred by failing to consider "factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion."  Pet'r's Mem. 10–11 (quoting *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)).[2]

The ALJ gave "minimal weight" to Dr. Hlavinka's July 6, 2016 opinion (AR 24, 675–678) because she found the occupational limitations Dr. Hlavinka recommended were not supported by the record.  Among them, Dr. Hlavinka had opined Petitioner could only sit for one hour and stand for thirty minutes total in an eight-hour workday and that she would miss five to ten days of work per month.  The ALJ said, however, that Petitioner had generally normal physical findings during her treatment with Dr. Hlavinka and she cited a medical record where Petitioner gave a "seven out of ten" pain report at a time when Dr. Hlavinka had observed that she was in no acute distress.  (AR 24, 680.)  The ALJ also considered Dr. Hlavinka's opinion in comparison to an opinion rendered by Dr. Starr, a psychological consultative examiner.  Dr. Starr found Petitioner had a normal gait and station as well as a normal EMG and normal x-rays.  (AR 24.)  The ALJ's decision is otherwise silent with respect to Dr. Hlavinka.

---

[2] Petitioner quoted from and cited a prior version of the *Trevizo* opinion, which was amended and superseded upon denial of rehearing.  However, the same quote appears in the subsequent opinion, which is the decision to which the Court cites.

**MEMORANDUM DECISION AND ORDER – 8**

The Court agrees that the ALJ erred in her treatment of Dr. Hlavinka's opinion.  Her entire analysis is contained in a single paragraph, most of which consists of restating Dr. Hlavinka's opinions.  Only a few brief sentences offer any analysis and such analysis does not satisfy the standard for rejecting a treating provider's opinion.  First, Dr. Starr was a consulting psychological examiner.  To give his opinion greater weight than the opinion of treating provider Dr. Hlavinka, the ALJ was required to give specific and legitimate reasons supported by substantial evidence.  Relying on an opinion by a psychological consultative examiner of normal findings in just a few areas at one moment in time does not satisfy that standard.

Moreover, the ALJ's decision does not describe that, when evaluating Dr. Hlavinka's opinion, the ALJ considered the required factors set forth in Social Security regulations, including the length of the treatment relationship and the frequency of examination.  Respondent argues that the ALJ's recitation that she "has also considered opinion evidence in accordance with" such requirements establishes that she did, in fact, properly consider such factors.  Resp't's Mem. 10 (Dkt. 14); (AR 19).  But that orphaned boilerplate statement, appearing several pages prior to the discussion of Dr. Hlavinka's opinion, lacks any detail or explanation of the ALJ's treatment of Dr. Hlavinka's opinion.  Hence, even if that opinion had been considered in depth, the illustration of that consideration and the specific and legitimate reasons for discounting the opinion, supported by substantial evidence are not to be found.

Even if such a boilerplate statement could suffice, the Court would nonetheless find that the ALJ's failure to discuss Dr. Hlavinka's lengthy treatment history when discounting his opinion in favor of Dr. Starr's opinion based on a one-time consultative examination would vitiate any possibility of finding such comparison a specific and legitimate reason for discounting Dr. Hlavinka's opinion.

**MEMORANDUM DECISION AND ORDER – 9**

Petitioner separately argues that the ALJ erred by rejecting Dr. Hlavinka's opinion despite his diagnosis that Petitioner suffers from fibromyalgia, a disease whose "cause is unknown" and which "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Pet'r's Mem. 9 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 591 (9th Cir. 2004)). The ALJ found that Petitioner's fibromyalgia was a severe impairment, but she failed to discuss how her evaluation of Dr. Hlavinka's opinion was consistent with that finding. (AR 17.) Her failure to discuss the fibromyalgia diagnosis – which is well-supported throughout the record, including by two rheumatologists Petitioner saw and whose records Dr. Hlavinka reviewed – further underscores that the ALJ's treatment of Dr. Hlavinka's opinion was not supported by substantial evidence.

**B. Dr. Song's September 25, 2015 Opinion and Dr. O'Brien's January 12, 2016 Opinion**

Petitioner faults the ALJ giving "significant weight" to the opinions of two Disability Determination Services consultants, Dr. Song, D.O., and Dr. O'Brien, M.D. She contends that such weight was improper because these doctors did not identify fibromyalgia as a medically determinable impairment (although they did identify inflammatory arthritis) and because they lacked substantial portions of the complete record.

The ALJ gave significant weight to these doctors' opinions because "they are well versed in the Social Security disability program." (AR 23.) She again referred to what she described as Petitioner's "generally normal physical signs during the period at issue," although she did not explain the relationship between such signs and these doctors' opinions. She also did not reconcile or discuss the difference between her own finding of fibromyalgia as a severe impairment and these doctors' opinions that fibromyalgia was not a medically determinable impairment.

**MEMORANDUM DECISION AND ORDER – 10**

The Court is persuaded that the ALJ's decision does not contain enough explanation to conclude that her treatment of Dr. Song's and Dr. O'Brien's opinions is supported by substantial evidence. It was error for the ALJ to assign such opinions significant weight without articulating in greater detail her reasoning for the weight she assigned.

### C.  Dr. Starr's September 23, 2015 Opinion

Petitioner further faults the ALJ's assignment of "significant weight" to the opinion of psychological consultative examiner Dr. Starr, Ph.D., because the opinion was not based on Petitioner's complete medical record. Notably, the full case file available to the ALJ included records of a suicide attempt by Petitioner as well as the results of neuropsychological testing by Dr. Lambert, events which occurred after Dr. Starr rendered his opinion.

In assigning significant weight, the ALJ found "the record supports Dr. Starr's opinion, particularly because of the claimant's generally normal mental findings." (AR 22.) Incongruously, however, the ALJ also gave significant weight to the neuropsychological evaluation performed by Dr. Lambert. (AR 23.) Dr. Lambert's "Diagnostic Impressions" included his conclusion that Petitioner's visual learning, memory, language-based executive functions, and visual attention and scanning are all impaired. (AR 754.) His entire evaluation also contains diagnoses of "Cognitive and neurobehavioral dysfunction; Major depressive disorder, recurrent episode with melancholic features; Fibromyalgia; and Substance or medication induced major or mild neurocognitive disorder." (AR 754.)

This evaluation performed by Dr. Lambert, as further discussed *infra*, was given significant weight by the ALJ even though her decision did not discuss Dr. Lambert's specific findings. But the evaluation described mental health findings that on their face appear to be inconsistent with "generally normal mental findings." There is a disconnect – in logic and

**MEMORANDUM DECISION AND ORDER – 11**

against the pertinent regulations – in the ALJ's repeated emphasis upon and substantial weight assigned to Dr. Starr's opinion of "generally normal mental findings."  In saying so, the Court does not express an opinion whether Dr. Lambert's evaluation may be reconciled with a statement of "generally normal mental findings."  The ALJ's error was not in finding that the record contains "generally normal mental findings"; rather, the error was in making such a finding without discussing Dr. Lambert's evaluation that arguably directly contradicts Dr. Starr's statement.

The same is true as to the discrepancy between the ALJ's finding of depression as a severe impairment and her justification for assigning significant weight to Dr. Starr's opinion – in other words, there is a seemingly large gap between depression as a severe impairment and "generally normal mental findings."  If it is possible to reconcile these two findings, the ALJ did not do so.  This was error.

The ALJ's explanation for her treatment of Dr. Starr's opinion is inconsistent with another medical record which she gave great weight and inconsistent with her finding of depression as a severe impairment.  Such inconsistency means that her decision was not supported by substantial evidence in this regard.  It is the ALJ's duty to resolve evidentiary conflicts in the record.  Not every such conflict requires explanation and the ALJ's decision is due some deference.  Nonetheless, in this case, the Court is persuaded that the ALJ's lack of explanation undermines the supportability of her decision.

### D.  Dr. Lambert's September 20, 2016 Evaluation

The ALJ gave "significant weight" to the neuropsychological evaluation performed by Dr. Lambert, Ph.D., noting that it did not contain a function-by-function evaluation or any

opinion but that it nonetheless "supported the claimant's residual functional capacity." (AR 23.) The decision did not further explain the ALJ's reasoning in this regard.

Petitioner contends that by failing to clarify the extent of cognitive ability impairments, Dr. Lambert's opinion created an ambiguity in the record that triggered a duty to develop the record further, which the ALJ did not do. Respondent, on the other hand, argues that the mere existence of clinical findings from a medical provider does not require a corollary opinion and that, as a matter of law, the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.

Petitioner replies that neither the ALJ nor Respondent provided any analysis of how the ALJ's interpretation of Dr. Lambert's evaluation supported the RFC; the ALJ merely stated such a conclusion without explaining or supporting it: "The ALJ provided no commentary as to how impaired visual learning, memory, language based executive functions, and visual attention are equated to the ability to pay attention, concentrate, and persist in fulltime competitive employment." Pet'r's Reply 8 (Dkt. 15).

The Court is persuaded by Petitioner's argument. Here also, the ALJ's decision is unsupported by substantial evidence, in that her decision contains no explanation of the ALJ's reasoning in her treatment of Dr. Lambert's evaluation. This was error. For clarity, the Court notes that the ALJ was not obligated to discuss Dr. Lambert's evaluation at all, as not every medical record or piece of evidence must be individually discussed. The ALJ found that the evaluation was not a medical opinion, and it therefore follows that it did not need to be assigned a weight like a medical opinion. But, the ALJ did select and emphasize this particular medical record in her decision; therefore, her treatment of it needed to be supported by substantial evidence. Instead, her discussion of Dr. Lambert's evaluation as supporting the RFC fell short

**MEMORANDUM DECISION AND ORDER – 13**

because it failed to address the cognitive impairments referenced in the evaluation which, in turn, raise a question as to Petitioner's occupational capacity.

The Court does not opine on whether Dr. Lambert's evaluation triggered the ALJ's duty to develop the record further, as Petitioner contends.  It is conceivable that the ALJ could have reconciled Petitioner's RFC with assigning Dr. Lambert's evaluation significant weight, but it may instead be true that the ALJ needed to seek Dr. Lambert's opinion.  The Court's ruling on this issue is solely that the ALJ's decision was not supported by substantial evidence with respect to its treatment of Dr. Lambert's evaluation.

### E.  Dr. Leavitt's August 2, 2016 and June 20, 2017 Opinions

Petitioner contends the ALJ erred when assigning two opinions of Petitioner's treating psychologist Dr. Leavitt, Psy.D., "minimal weight" and "little weight."  (AR 23.)

As with the treatment of Dr. Hlavinka's opinions, described *supra*, the ALJ described generally normal psychological signs during examinations and she referred favorably to the opinion of consultative examiner Dr. Starr.  With respect to the June 20, 2017 opinion, the ALJ noted that Dr. Leavitt, a psychologist, opined on Petitioner's physical occupational limitations and remarked that a medical provider would be better equipped to gauge such limitations.  The ALJ noted that Dr. Leavitt (1) did not cite any objective medical evidence to support his opinion regarding Petitioner's physical limitations; (2) did not reference particular medical records; (3) did not point out physical signs; and (4) did not provide an opinion in his area of expertise.

The ALJ properly described Dr. Leavitt as a "treatment provider" who "treated the claimant's psychological symptoms."  (AR 23.)  But, the ALJ said nothing about the length of the treatment relationship, the frequency of examination, or the other factors discussed *supra* that an ALJ must consider when evaluating such opinions.  Thus, although the ALJ did offer some

**MEMORANDUM DECISION AND ORDER – 14**

specific and legitimate reasons for discounting Dr. Leavitt's opinions, her treatment of such opinions is not supported by substantial evidence because the decision does not demonstrate sufficiently that she considered the required factors.[3]  Thus, the ALJ erred in her treatment of Dr. Leavitt's opinions.

**2.   The ALJ Erred by Discounting Petitioner's Credibility Improperly.**

Next, Petitioner argues the ALJ erred in her treatment of Petitioner's testimony regarding the severity of her symptoms.  To reject a claimant's credibility, the ALJ must offer "specific, clear and convincing reasons" for doing so.  *Trevizo*, 871 F.3d at 678.  Once a claimant produces objective medical evidence of an underlying impairment, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Regarding Petitioner's credibility, the ALJ found:

> the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>     As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant's medical evidence does not support the claimant's statements.

(AR 20.)

The ALJ discussed Petitioner's allegations of physical limitations and psychological impairments at some length, repeatedly noting that many allegations were unsupported by objective evidence or that various medical signs were normal.  (AR 20–22.)

---

[3] If the only issue on appeal were the treatment of Dr. Leavitt's opinions, this issue might very well be decided the other way.  However, the ALJ's cursory reasoning with respect to other opinions, especially Dr. Hlavinka's opinion, supports the Court's conclusion here that the ALJ did not consider the required factors with respect to Dr. Leavitt's opinions.

**MEMORANDUM DECISION AND ORDER – 15**

Petitioner contends that "[t]he ALJ failed to acknowledge that Petitioner consistently reported the need for regular rest breaks, consistent with the fibromyalgia diagnosis." Pet'r's Mem. 16 (Dkt. 12). "The ALJ seemingly misunderstood the fundamental aspects of fibromyalgia – the condition causes significant pain and the need for rest breaks, yet there is no objective evidence in this diagnosis of exclusion." *Id.* at 16–17.

Respondent contends in response that the ALJ fully understood fibromyalgia and quotes from an Agency ruling on fibromyalgia which confirms that objective evidence is relevant to symptom evaluation.[4] Resp't's Mem. 4 (Dkt. 14) (citing SSR 12-2p, *available at* 2012 WL 3104869).

In this Court's review, the ALJ's decision discusses Petitioner's credibility only in a roundabout way. Nowhere does the ALJ expressly state whether she found Petitioner credible or not. The decision does refer to Petitioner's allegations that she can clean her house for fifteen minutes at a time and walk for one or two blocks before resting for twenty minutes. (AR 20.) But as to fibromyalgia – which, again, the ALJ found to be a severe impairment – the ALJ did not mention, much less discuss in the context of the Petitioner's medical record, the facts that fibromyalgia often does not present with clear objective symptoms and that the need for frequent rest breaks is a typical symptom.

Hence, the ALJ's stated reasons for discounting Petitioner's credibility were neither clear nor convincing and the ALJ therefore erred in rejecting Petitioner's allegations of pain. As

---

[4] The Ruling provides that fibromyalgia is treated the same as other impairments with respect to evaluating a person's statements about symptoms and functional limitations: first, there must be medical signs and findings showing a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged; second, the intensity and persistence of the person's pain or other symptoms are evaluated to determine the extent to which the symptoms limit the person's capacity for work. SSR 12-2p, at *5.

**MEMORANDUM DECISION AND ORDER – 16**

compared to many other impairments that arise in the Social Security setting, fibromyalgia is somewhat unusual because it frequently presents itself without clear objective symptoms, making it difficult to evaluate within the applicable regulatory framework. But SSR 12-2p – which the ALJ did not cite in her decision – fits fibromyalgia into the broader Social Security framework and it is helpful to some extent in that regard.

The ALJ's decision did not expressly state that the ALJ found Petitioner not to be credible, instead referring to Petitioner's allegations as "not entirely consistent" and "inconsistent" with the medical evidence and that "the medical record only partially supports the claimant's allegations." (AR 20, 21.) Such a framing of the question of a claimant's credibility may be appropriate and adequate in some cases, but not here. In this case, fibromyalgia is listed as one of Petitioner's severe impairments; therefore, the lack of a more direct discussion regarding Petitioner's credibility undermines the ALJ's decision.

Moreover, elsewhere in this portion of the decision the ALJ refers to the lack of objective evidence supporting Petitioner's allegations or refers to "normal" findings. The relevance of such references is unclear, given that an ALJ may not rely solely on the lack of objective medical evidence to reject a claimant's allegations. If intended to indicate inconsistency between Petitioner's allegations and the medical record, the ALJ misconstrued the nature of fibromyalgia. For instance, the fact that the ALJ only mentions Petitioner's alleged need for rest breaks when reciting Petitioner's own allegations further supports Petitioner's argument that the ALJ did not consider such allegations in the context of fibromyalgia.

The Court is mindful that the ALJ was not obligated to credit Petitioner's subjective allegations about the severity or limiting effects of her pain or other symptoms. But the ALJ was obligated to provide specific, clear and convincing reasons for rejecting such allegations. Here,

**MEMORANDUM DECISION AND ORDER – 17**

she concluded that Petitioner suffers from the severe impairment of fibromyalgia.  Against that

backdrop, her stated reasons for rejecting Petitioner's allegations do not constitute specific, clear

and convincing reasons.  Thus, the ALJ's decision to discount Petitioner's subjective testimony

was reversible error.

### 3.   The ALJ Did Not Err in Her Treatment of Third-Party Statements.

Petitioner faults the ALJ for failing to provide germane reasons for discounting the

testimony of her mother regarding the severity of her symptoms. "Partial weight" was given to

two reports from Petitioner's mother, which the ALJ characterized as indicating "severe

psychological and physical limitations."  The ALJ noted that:

> while the individual is close to the claimant, she is not a trained medical expert.
> Further, while the undersigned is not questioning the individual's motives, the
> individual may color her statements based on a variety of unknown factors. As
> such, the undersigned gives partial weight and finds that while the reports were
> helpful, she will defer to the objective medical evidence and acceptable medical
> source opinion evidence described above.

(AR 24.)

An ALJ must give germane reasons to reject the testimony of a third-party lay witness.

*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  Petitioner argues that the ALJ rejected

her mother's testimony without discussing the extent to which her mother's observations were

consistent with Petitioner's own testimony and without explaining how any potential bias

affected her mother's testimony.  Petitioner argues that neither of these were germane reasons.

The Court is not persuaded that the ALJ "rejected" Petitioner's mother's testimony such

that germane reasons were required.  The ALJ gave the testimony "partial weight" and said it

was "helpful."  (AR 11.)  Even if the ALJ's treatment did constitute rejection of such testimony,

the ALJ's decision to distinguish the mother's testimony on matters of medicine from the

opinions of the medical providers and to give the mother's testimony less weight because of that

**MEMORANDUM DECISION AND ORDER – 18**

distinction, is a germane reason for treating the testimony the way she did.  Petitioner has not

shown error with respect to such treatment.

4. **Because the ALJ Erred in Her Weighing of Medical Opinions, the Assigned RFC Was Not Supported by Substantial Evidence.**

The last issue Petitioner raises relates to the RFC the ALJ assigned.  Petitioner contends

the ALJ erred by assigning an RFC that was inconsistent with her own findings and not

supported by the record.  The Court has found error at an earlier stage of the ALJ's decision, and

Petitioner has already established that the RFC is not supported by substantial evidence.  Thus,

the resolution of this issue does not affect the outcome of this decision.  However, the Court will

address the issue here.

The ALJ found that Petitioner suffers from a "moderate limitation" with regard to

"concentrating, persisting, or maintaining pace."  (AR 18.)  The ALJ also assigned an RFC

indicating that Petitioner "can understand, remember, and carry out unskilled and detailed tasks

up to Specific Vocational Preparation (SVP) three and a GED reasoning level of three.  The

claimant can maintain attention, concentration, persistence, and pace for such tasks for eight-

hour workdays and forty-hour workweeks."  (AR 19.)  Petitioner argues that these findings are

mutually inconsistent, in that someone with a moderate limitation in concentration, persistence,

or pace cannot maintain attention for an eight-hour workday.

The Court is not persuaded.  Framing Petitioner's argument differently, she contends that

a person with a moderate limitation in concentrating, persisting, or maintaining pace cannot

maintain attention for an eight-hour workday.  If such an argument were credited, the result

would be that anyone with a moderate limitation in concentration, persistence, or pace would

necessarily be disabled.  But the so-called "paragraph B" Social Security regulations relating to

the severity of a claimant's mental impairments expressly provide that a person must show two

**MEMORANDUM DECISION AND ORDER – 19**

"marked" or one "extreme" limitation in various categories (one of which is concentration, persistence, or pace) to establish disability.  One "moderate" limitation does not establish disability.  Conceivably, a person with moderate limitations in concentration, persistence, or pace may be unable to work due to a lack of attention, but it is not necessarily so.

The ALJ's RFC assignment is not in error based on a finding that Petitioner can maintain attention for an eight-hour workday.  However, as discussed above, the resolution of this issue does not change the outcome of the case, given the other errors by the ALJ.

**5.  Remand Is Necessary to Consider Whether Petitioner Is Disabled.**

Finally, Petitioner argues the case should be remanded for an immediate award of benefits rather than for further proceedings.  However, several of the ALJ's errors were based on a lack of explanation that, conceivably, could be supported by explanation without changing the outcome of the ALJ's decision.  That is, subsequent consideration on remand may result in a finding of either disability or non-disability.  Therefore, the Court does not decide here whether Petitioner is disabled.  The case will be remanded for further proceedings.

## IV. <u>CONCLUSION</u>

Petitioner has shown that the ALJ committed reversible legal error regarding the weighing of medical opinions and the evaluation of Petitioner's testimony.  These errors undermine the ALJ's findings regarding Petitioner's RFC.  Accordingly, the ALJ's decision is not supported by substantial evidence and it will be reversed and remanded for further proceedings consistent with this decision.

\ \ \

\ \ \

\ \ \

**MEMORANDUM DECISION AND ORDER – 20**

## V. <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED,** and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: May 29, 2020

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 21**